# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DONELLY SMITH[1],

      Petitioner,

      v.                                    Case No. 08-CV-531

VARNISHA S. BOWEN, Probation and Parole
Agent, QUALA CHAMPAGNE, Administrator,
Bureau of community Corrections, Wisconsin
Department of Corrections,

      Respondents.

## DECISION AND ORDER

On June 23, 2008, petitioner Donelly Smith, who is proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that his state court conviction and sentence were imposed in violation of the Constitution. On March 4, 2003, the petitioner was convicted of "substantial battery" in the Milwaukee County Circuit Court. On April 9, 2003, the petitioner received a ten-year bifurcated sentence consisting of five years initial confinement and five years extended supervision.

In his petition, the petitioner challenged the judgment of his conviction on six grounds: (1) judicial bias, (2) violation of confrontation rights and an ex post facto violation (3) denial of the right to self representation, (4) lack of compulsory process, (5) unreasonable failure by the state to address "several of [his] issues or their response," and (6) retroactive application of Supreme Court case law to his case. (Petition for a Writ of Habeas Corpus [Petition] at 7, 10).

---

[1]Donelly Smith is also known as Donnelly Smith in other federal court filings.

United States District Judge Charles N. Clevert conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 cases.  In a December 30, 2008, order, Judge Clevert found that grounds one through four in the petition "present[ed] at least colorable constitutional issues." (Court's Screening Order of December 30, 2008, at 3).  Judge Clevert rejected the fifth and sixth grounds in the petition because as to ground five, he was "unable to divine a cognizable constitutional claim from the petitioner's statement" and ground six was "not a constitutional ground for relief." Id. Rather, he concluded that it "appear[ed] to be an argument in support of the petition." Id.  As such, Judge Clevert ordered the respondents to file an answer, motion or other response to the petition for a writ of habeas corpus within 60 days of the order.  In accordance with this order, the respondent filed an answer on March 2, 2009 and the petitioner filed a "Reply to Respondents (sic) Response to Petition for Writ of Habeas Corpus" on March 10, 2009.  (Docket #13).

On March 6, 2009, this court entered a revised scheduling requiring (1) the petitioner to file a brief in support of his petition no later than April 17, 2009; (2) the respondent to file any opposing brief no later than May 15, 2009; and (3) the petitioner to file any reply brief no later than May 29, 2009.  The petitioner did not file a brief in support of his petition in accordance with this scheduling order.  However, he did file a "Reply to the Respondents (sic) Response to Petition for Writ of Habeas Corpus" on March 10, 2009.  On the assumption that the petitioner intended his March 10, 2009, Reply to represent both his response to the respondent's answer and his opening brief in support of his petition, the respondent filed a brief in opposition to the petition on May 15, 2009.  On June 3, 2009, the petitioner notified the court that he would not file a reply brief.  Therefore, the petition is ready for disposition and will be addressed herein.

- 2 -

## APPLICABLE LAW

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, which provides in pertinent part,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This provision entitles federal courts, acting within their jurisdiction, to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations.  Lindh v. Murphy, 96 F.3d 856, 870-77 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997).  "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'"  Hereford v. McCaughtry, 101 F. Supp. 2d 742, 746 (E.D. Wis. 2000) (quoting Sanchez v. Gilmore, 189 F.3d 619, 623 [7th Cir. 1999]).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent."  Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams v. Taylor, 529 U.S. 362, 404-05 [2000]).  The court of appeals for this circuit recognizes the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts

- 3 -

governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington v. Smith, 219 F.3d at 628. The court went on to explain that the "unreasonable application of" clause is broader and "allows a federal habeas corpus court to grant habeas relief whenever the state court 'unreasonably applie[d] [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." Henson v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997). In Morgan v. Cranch, the court explained that,

> [u]nreasonableness is judged by an objective standard and under the "unreasonableness application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 529 U.S. at 411). Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. Washington v. Smith, 219 F.3d at 628.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

The facts of this case were set forth by the Wisconsin Court of Appeals in its decision:

> A jury found Smith guilty of substantial battery (with intent to cause substantial bodily harm) against his girlfriend, in violation of Wis. Stat. § 940.19(3) (2001-02). The jury heard from the victim only through hearsay; she did not testify. The State's version of the incident consisted principally of Milwaukee Police Officer Steve Delie's extensive observations of Smith, and the victim and her hearsay exclamations. Officer Delie describe the victim as "highly upset," "crying," kind of shaking like – like she had been through a traumatic

- 4 -

experience," and "in a state of almost shock," and recounted her exclamations at the scene. He described Smith as angry at the victim and the police. He also testified that Smith smelled of alcohol, and had slurred speech. The State also presented evidence from an emergency room physician who supervised the victim's treatment, and from the lead telecommunicator who supervised the handling of 9-1-1 calls for the Milwaukee Police Department's Communications Division.

Police received two 9-1-1 calls: the first caller hung-up; the second caller complained of a man beating a woman. At the scene, Officer Delie heard someone yelling,

"[h]e's beating me. He's beating me. He's hurting me." We heard a pushing and shoving commotion.. . . The female voice we heard at the time was yelling, "[h]elp me. Help me. He's hurting me. He's beating me." [A] male voice continued to speak obscenities at her and at us.

Finally, a man opened the door, and Officer Delie testified that:

the woman that we had heard screaming was standing in front of us wearing a white T-shirt covered with blood about to down here, and she had several bumps on her head, and had what appeared to be a bent-out-of-shape pinky, and she was very upset. She was yelling and screaming that . . . Donelly Smith . . . had beat her over the head with his boot and had smacked her around a little bit.

(Answer to Petition for Writ of Habeas Corpus [Answer], Exh. H at 2-3) (footnotes omitted).

The petitioner pled not guilty to the charge and proceeded through the trial pro se with court-appointed standby counsel. He was convicted by a jury in Milwaukee County Circuit Court on March 4, 2003. Milwaukee County Circuit Court Judge Jeffery Wagner sentenced the petitioner to a ten-year bifurcated sentence consisting of five years in state prison followed by five years of extended supervision.

After his conviction, the court appointed postconviction counsel with whom the petitioner was dissatisfied. After verbal and written warnings of the potential ramifications, the petitioner continued to proceed pro se during post-conviction and appellate proceedings. The petitioner

- 5 -

filed several post-conviction motions, including motions for a new trial, the production of transcripts, the removal of his trial court judge, and to set aside the verdict. All of the motions were denied by the trial court as wholly conclusory and lacking the requisite legal or factual support.

The petitioner then appealed his conviction and the judgment on his postconviction motions to the Wisconsin Court of Appeals. In his appeal, the petitioner raised five issues which were consistent with his postconviction motions:

> (1) the trial court judge's impartiality, (2) the prosecutor's conduct in re-issuing the criminal charges; (3) the admissibility of the victim's hearsay evidence, in light of her failure to appear at trial; (4) standby counsel's effectiveness; and (5) the trial court's denial of his new trial motion based on the victim's statements at sentencing disputing the trial evidence.[2]

(Answer, Exh. H at 4). The Wisconsin Court of Appeals affirmed the petitioner's conviction and the trial court's orders.

As to the petitioner's first ground, the court of appeals ruled that the petitioner failed to present any evidence which indicated any bias or prejudice by the trial court judge against the petitioner. In doing so, the court cited State v. Hollingsworth, 160 Wis. 2d 883, 467 N.W.2d 555 (Ct. App. 1991) and State v. McBride, 187 Wis. 2d 409, 523 N.W.2d 106 (Ct. App. 1994) to show that the petitioner failed to prove by a preponderance of the evidence that there was subjective or objective bias on the part of the judge. The court did not cite any Supreme Court precedent.

With respect to the petitioner's third ground, the admissibility of hearsay evidence, the court of appeals held that the trial court correctly concluded that the victim's statements were

---

[2]Only numbers (1), (3) and (4) will be discussed at length since they encompass the petitioner's grounds for relief as pleaded in his writ for habeas corpus.

Case 2:08-cv-00531-PJG   Filed 09/23/11   Page 6 of 23   Document 21

non-testimonial and admissible under the excited utterances exception to the hearsay rule. The court cited Davis v. Washington, 547 U.S. 813 (2006), in concluding that the petitioner's right to confront witnesses against him was not violated because the statements were non-testimonial. Although the court stated some of the statements made by the police officer was arguably testimonial, the court concluded that the statements were cumulative to, or corroborative of, other properly admissible testimony. Accordingly, the court held that any admission was harmless, citing Delaware v. Arsdall, 475 U.S. 673, 684 (1986).

With respect to the petitioner's fourth ground for relief, the court of appeals reviewed the trial transcript and determined that the petitioner preserved actual control of his case and standby counsel did not compromise Smith's autonomy or the jury's perception of autonomy during the trial. The court ruled that this was in accordance with the principles set forth in McKaskle v. Wiggins, 456 U.S. 168 (1984). The court made no mention of the petitioner's compulsory process claim.

The petitioner filed a pro se petition for review with the Wisconsin Supreme Court. The Wisconsin Supreme Court denied review on April 8, 2008.

## ANALYSIS

The petitioner's writ of habeas corpus asserts the following constitutional grounds for relief: (1) due process violation based on judicial bias, (2) Sixth Amendment right to confrontation, (3) right to self representation, and (4) right to compulsory process. The court will address each in turn.

**A. Judicial Bias**

- 7 -

The petitioner asserts that his Fifth Amendment right to due process was violated when the trial court judge exhibited judicial bias. Specifically, the petitioner maintains that "the trial court was not impartial . . . and [he] was treated like a fool before the jury." (Petition at 6). The petitioner contends that the trial judge ignored or denied his objections and rudely interrupted him during the trial. He further states that while the petitioner was allowed to speak, "his words were never heard or totally disregarded." (Petitioner's Reply to Respondent's Response to Petition for Writ of Habeas Corpus [Petitioner's Reply] at 4).

While neither the petitioner nor the Wisconsin Court of Appeals cited to any United States Supreme Court decision[3], it appears, based on the petitioner's examples of judicial bias, that the likely controlling Supreme Court case is Liteky v. United States, 510 U.S. 540 (1994). A judge is required to recuse himself from any proceeding where his impartiality might reasonably be questioned. 28 U.S.C. § 455(a). This includes when the judge has a personal bias or prejudice toward a party. 28 U.S.C. §455(b)(1). However, in order for a party to recuse a judge, that party should show that the judge's bias or prejudice stemmed from an extrajudicial source and not solely from information gained during the course of the proceedings. Liteky, 510 U.S. at 554; see also, United States v. Grinnell Corp., 384 U.S. 563 (1966). While the extrajudicial source factor is neither necessary nor a sufficient condition for recusal on its own, the Supreme Court in Liteky made clear that a judge's rulings and opinions formed during trial do not constitute a basis for recusal predicated on bias or partiality:

---

[3]The Supreme Court "does not require citation of our cases — indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). Therefore, the fact that the Wisconsin Court of Appeals failed to cite to any "clearly established Federal law as established by the United States Supreme Court" is irrelevant as long as it followed the Supreme Court's rulings. Washington v. Smith, 219 F.3d at 628.

- 8 -

opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

Liteky, 510 U.S. at 555. Expressions of impatience, dissatisfaction, annoyance or even anger do not establish partiality or bias so long as they are "within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." Id. at 555-556. The judge need only put forth ordinary efforts at courtroom administration to remain immune. Id. at 556.

In this case, the court of appeals upheld the trial court's denial of the petitioner's recusal motion, concluding that the petitioner failed to present any evidence that the trial judge was biased against him. Instead, the appeals court stated: "The trial court reluctantly allowed Smith to represent himself; its reluctance, repeated warnings, and appointment of standby counsel demonstrate prudence, not objective bias." (Answer, Exh. H at 7).

To the extent the petitioner claim is based on the trial court's granting of a continuance requested by standby counsel, such continuance was granted to permit the defense to obtain expert medical evidence which would be beneficial to the petitioner. A further review of the transcript shows that the trial judge was patient with the petitioner, who continually interrupted both the judge and the respondent. All comments made to the petitioner were in an effort to maintain courtroom administration and proper procedures. At no point did the judge exhibit deep-seated favoritism toward the respondent or antagonism toward the petitioner which would have made fair judgment impossible. The petitioner also failed to present any extrajudicial source of bias or prejudice. Therefore, this court cannot conclude that the state

court's determination that the petitioner failed to establish judicial bias is contrary to or an unreasonable application of clearly established Supreme Court precedent.

## B. Confrontation Clause

The petitioner asserts that his Sixth Amendment right to confront witnesses was violated when the victim failed to appear at trial and the court illegally admitted hearsay evidence against him in lieu of the victim's own testimony. He contends that the trial court disregarded the victim's sworn affidavit and her statements during his sentencing hearing, but instead relied wholly upon the hearsay testimony of a police officer who was present at the scene. The petitioner asserts that this was not harmless error. The petitioner also maintains that the court of appeals' reliance on Crawford v. Washington, 541 U.S. 36 (2004) and Davis v. Washington, 547 U.S. 813 (2006) was an ex post facto violation.

The court will first address whether the court of appeals' application of the principles set forth in Crawford and Davis was a violation of the retroactivity rule established in Teague v. Lane, 489 U.S. 288 (1983). In Teague, the Court held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." The petitioner's argument fails on two grounds. First, although the petitioner was convicted on March 4, 2003, the conviction did not become final until July 13, 2008, two years after the Davis decision and four years after the Crawford decision. Second, Teague "entitles the state, but not the petitioner, to object to the application of a new rule to an old case." Free v. Peters, 12 F.3d 700, 703 (7th Cir. 1993) (citing Lockhart v. Fretwell, 506 U.S. 364 [1993]). Therefore, the court of appeals did not err by relying on Crawford and Davis.

With regard to the petitioner's confrontation claim, the court of appeals found that admission of the victim's hearsay statements under the excited utterance exception passed

constitutional muster pursuant to <u>Davis</u>, 547 U.S. at 813. In <u>Davis</u>, the Court addressed what constitutes "testimonial statements. The Court noted that it was not "attempting to produce an exhaustive classification of all conceivable statements – or even all conceivable statements in response to police interrogation – as either testimonial or nontestimonial." Instead, the Court explained testimonial and nontestimonial statements for purposes of the Sixth Amendment as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822. Therefore, the admission of nontestimonial hearsay is not subject to the Sixth Amendment confrontation clause. <u>Id.</u> at 821; <u>see also United States v. Ellis</u>, 460 F.3d 920, 923 (7th Cir. 2006).

Upon review, the court of appeals held that the victim's statements to the police officer on the night of the incident were nontestimonial because "they were not in response to police questioning, but were spontaneously exclaimed while police were performing their public safety caretaker role of responding to a 9-1-1 call for help." (Answer, Exh. H at 10). The appeals court found that the trial court "admitted the victims nontestimonial hearsay as an excited utterance, which is a firmly rooted exception to the hearsay rule." <u>Id.</u>

A review of the record, including the 9-1-1 calls and the testimony of the Officer Delie, shows that the police were responding to an ongoing emergency when they arrived at the victim's residence. The petitioner was yelling profanities at both the victim and the police, and there were noises of scuffling and commotion. The statements by the victim at this time also

- 11 -

indicated an ongoing emergency. Those statements were made voluntarily and not in response to any questioning by the police. Therefore, the court of appeals properly relied on Davis in rejecting the petitioner's confrontation claim.

On September 16, 2011, the petitioner provided the court with a recent decision, Cross v. Hardy, 632 F.3d 356 (7th Cir. 2011), which held, under the facts of the case, that the state failed to demonstrated that it employed good faith efforts to locate the complainant. The petitioner states that the facts "mirror the instant case." (Petitioner' Submission of September 16, 2011, at 1). In Cross, the state's primary witness testified at the defendant's first trial. The jury was hung on the sexual assault charges and the court declared a mistrial. The defendant was retried and when the primary witness was not located, the trial court granted the state's motion to substitute the witness' prior testimony from the first trial. The court determined that the state failed to demonstrate that it make a good faith effort to locate the complainant and that the state appellate court unreasonably applied federal law when it concluded that the complainant was unavailable. The facts of this case are clearly distinguishable. In Cross, the focus was on whether or not the state acted in good faith in attempting to locate its crucial witness to testify at trial. The federal appellate court said it had not. Here, the court determined that the challenged testimony was nontestimonial and was admissible under the excited utterance exception to the hearsay rules. Therefore, the court concludes that Cross is not persuasive or compelling authority in this action.

In this case, the respondent also maintains that if there was a violation of the petitioner's Sixth Amendment right to confrontation, such violation was harmless error under Brecht v. Abrahamson, 507 U.S. 619 (1993). (Answer, Exh. H at 10, n.5). According to the

- 12 -

respondent, any potential violation did not have a substantial and injurious effect on the jury's verdict.

In Brecht, the Supreme Court ruled that the harmless error test for determining whether habeas corpus relief should be granted is whether the constitutional error had "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 623 (citing Kotteakos v. United States, 328 U.S. 750 [1946]). This harmless error analysis applies to constitutional errors that the Supreme Court has characterized as trial errors. Trial errors occur during the presentation of the case to the jury and are amenable to harmless error analysis because they may be assessed in the context of the other evidence presented in order to determine what effect it had on the overall trial. Brecht, 507 U.S. at 629 (citing Arizona v. Fulminante, 499 U.S. 279, 307-308 [1991]).

In addressing the issue of harmless error, the court of appeals stated that "some of [Officer Delie's] testimony, recounting the victim's hearsay, was arguably testimonial." (Answer, Exh. H at 10 n.5). This included some of the officer's testimony which established events prior to his arrival on the scene. For example, he testified that, while the victim was still in a state of shock, she told him that the petitioner "came home late at night and was intoxicated and told her to make him a dinner, and at that point in time she said no and [he] became enraged and began beating her with a boot about the head and hand." (Answer, Exh. N at 11, lines 7-11). The officer also testified several times that the victim was "fearful, shaking and sobbing" when she made this statement and "the defendant was on the scene." (Answer, Exh. N at 11, lines 3-4). After its review, the appeals court concluded:

> If the trial court improperly admitted any arguably testimonial hearsay (and we are not persuaded that it did), the admission was harmless beyond a reasonable doubt. as it was either cumulative to or corroborative of other properly admissible testimony,

- 13 -

or inconsequential to the overwhelming evidence of Smith's guilt for substantial battery. *See Delaware v. Van Arsdall,* 475 U.S. 673 684 (1986).

(Answer, Exh. H at 11).

Moreover, even if the hearsay was testimonial, admission of the statements of the victim was harmless error under the holding in Brecht. Accordingly, for the foregoing reasons, the state appeals court's determination that the petitioner's confrontation rights were not violated was a reasonable application of clearly established Supreme Court precedent.

## C. Right to self-representation

The petitioner asserts that his Sixth Amendment right to self representation was violated by the court's appointment of standby counsel during his trial because standby counsel, not the petitioner, had direct control of his defense. The petitioner maintains that standby counsel withheld evidence, subpoenaed witnesses without his consent and that the court granted a continuance based on standby counsel's motion, but without his permission.

It is clearly established federal law that a defendant's right to self representation is not violated when a trial judge, even over the defendant's objections, appoints standby counsel in order to aid the court. McKaskle v. Wiggins, 465 U.S. 168 (1984). However, even with the appointment of standby counsel, the defendant maintains certain specific rights: "The pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." Id. at 174.

There are two principle limitations on the extent of standby counsel's unsolicited participation. "First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury." Id. at 178. Standby counsel cannot interfere with

- 14 -

significant tactical decisions, control the questioning of witnesses, or speak instead of the defendant on matters of importance. "Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." Id. However, a defendant's right to representation is not infringed when standby counsel assists in maintaining compliance with courtroom procedures or aiding the defendant in overcoming routine procedural or evidentiary obstacles. McKaskle, 465 U.S. at 183. "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." Id. at 185 (quoting Faretta v. California, 422 U.S. 806, 835 [1975]).

The appellate court in this case held that "[r]eview of the trial transcript establishes that Smith 'preserve[d] actual control over the case he cho[]se[] to present to the jury' and that standby counsel's participation in no way 'destroy[ed] the jury's perception that the defendant [wa]s representing himself.'" (Answer, Exh. H at 13) (quoting McKastle, 465 U.S. at 178). The court further explained: "Standby counsel did not compromise Smith's autonomy; insofar as Smith's dignity was compromised, it was compromised by Smith, not by standby counsel." (Answer, Exh. H at 13). Therefore, the court found no legitimate bases for the petitioner's claim that his right to self representation had been violated.

Upon review of the record, it is clear that the petitioner maintained actual control of the case and that the jury perceived the petitioner as being in control. It was the petitioner, not standby counsel, who conducted the voir dire, conducted the direct and cross examinations of the witnesses, and gave the opening and closing statements. The petitioner made it clear to both the judge and the jury that he was in charge of his case. Accordingly, this court cannot

- 15 -

conclude that the state court's determination is contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## D. Compulsory Process

The petitioner maintains that his Sixth Amendment right to compulsory process was violated by subjecting him to a no contact order with the alleged victim, whom he wanted to call as a witness in his trial. The petitioner also contends that his right to compulsory process was violated when "[t]he alleged victim never authorized the release of her medical records, so the state nor [the] petitioner had legal access to records that would verify whether the charged injury was preexisting." (Petition at 9).

The respondent asserts that the petitioner procedurally defaulted his compulsory process claim by failing to raise the claim in his petition for review to the Wisconsin Supreme Court. The respondent also points out that the petitioner did not address the procedural default defense in his Reply to Respondent's Response to the Petition for Writ of Habeas Corpus and made no effort to demonstrate cause and prejudice to excuse his default or to show that a fundamental miscarriage of justice would occur if the default was enforced by the court. If the petitioner procedurally defaulted on the claim, this court cannot reach a decision on the merits. Gomez v. Jaimet, 350 F.3d 673, 679 (7th Cir. 2003).

Before the court can examine the merits of the petitioner's writ of habeas corpus, the court must determine whether the petitioner exhausted all his remedies in state court. Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). A habeas corpus petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). In order to exhaust all state remedies, a habeas corpus petitioner must "give the

- 16 -

state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review." Id. at 845.

To provide the State with the necessary opportunity, the petitioner must fairly present his claim in each appropriate state court, thereby alerting that court to the federal nature of the claim. Baldwin v. Reese, 541 U.S. 27, 29 (2004). To satisfy that requirement, an inmate must present "both the operative facts and the legal principles that control each claim to the state judiciary." Wilson v. Briley, 243 F.3d 325, 327 (7th Cir.2001). A claim is not fairly presented if a court must "read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Id. at 32. If a claim is fairly presented to the court of appeals, but not in the petition to the Wisconsin Supreme Court, then that claim is considered procedurally defaulted. See Sullivan, 526 U.S. at 848.

To determine whether a petitioner fairly presented a claim to the state judiciary, courts in this circuit examine four factors:

> (1) whether the petitioner relied on federal cases that engage in a constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

Ellsworth v. Levenhagen, 248 F.3d 634, 639 (7th Cir. 2001) (citing Wilson v. Briley, 243 F.3d 325, 327 [7th Cir. 2001]). "The bottom line is that the 'task of the habeas court in adjudicating any issue of fair presentment is assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve

that issue on a federal basis.' " Kurzawa v. Jordan, 146 F.3d 435, 442 (7th Cir. 1998) (quoting Verdin v. O'Leary, 972 F.2d 1467, 1476 [7th Cir. 1992]).

In his petition for review filed with the Wisconsin Supreme Court, the petitioner's discussion of compulsory process was limited to two statements. First, in the "issues presented" section he states: "APPELLANT WAS DENIED THE RIGHT OF COMPULSORY PROCESS. The court of Appeals never addressed the issue despite its inclusion in the filed briefs." (Answer, Exh. I at 2) Second, in the "Violations of State Statutes" section of his argument, he states:

> Even more revealing is the fact that the trial court allowed the prosecution to present illegally obtained evidence to the jury, where the alleged victim never authorized release of her health care records. The release of her health care records under these circumstances is a crime pursuant to sec. **146.82 Wis. Stats**. . . . The mentioned doctor was not authorized to discuss the alleged victim's health care records and there is no record evidence that the conditions of sec. **908.03(6mc)Wis. Stats** were ever met. These circumstances are in violation of the **Compulsory Process Clause** of the **United States Constitution** where the above mentioned doctor admitted that previous X-rays were needed to be complete to be honest (rec. 66-49) but without the alleged victim's authorization this appellant did not have legal access to relevant health care records.

(Answer, Exh. I at 8) (emphasis in original). Although this statement refers to a specific constitutional right by explicitly stating what right was violated, this statement fails the test for fair presentation. The petitioner did not cite any case law – neither federal nor state cases -- pertaining to the compulsory process clause. He did not explain how violation of Wis. Stat. §§ 1468.82 or 908.03(6mc) violated his compulsory process rights. He also failed to mention the no-contact order. Moreover, the pattern of facts set forth in his discussion of the compulsory process clause do not fit "well within the mainstream of constitutional litigation "

- 18 -

because these facts as described do not give rise to a compulsory process claim.  Ellsworth

248 F.3d at 639.

The facts set forth by the petitioner in his confrontation claim arguably could be

interpreted as the basis for the petitioner's compulsory process claim.   With regard to his

confrontation rights, the petitioner states:

> [T]he trial court never made a confrontation analysis of whether the State's efforts complied with this appellant's confrontation rights.  The Court of Appeals fails to recognize that no legitimate effort was made in this case to produce the alleged victim for trial.  The State never attempted to serve the witness with a subpoena, this fact is confirmed by the record, and not serving a witness with a subpoena when that step was a foreseeable potential condition to a witnesses presence at trial was not reasonable and does not reflect the Constitutionally required good-faith effort to secure this appellant's right to confront his accuser.  Therefore, the State has never demonstrated that this witness was Constitutionally unavailable, and the trial court erred in permitting the jury to hear any hearsay testimony.

(Petitioner's Petition for Review and Appendix, Exh. I at 6)

The petitioner appears to argue that the state's failure to subpoena the victim to testify

at trial violated his compulsory process rights.  Again, the petitioner failed to cite to any federal

case law, nor did he engage in any constitutional analysis.  The constitutional right that this

argument raises is more akin to a defendant's right of confrontation.  And finally, none of the

alleged facts indicate a compulsory process claim.  It is the accused's, not the prosecution's,

obligation to call witnesses to testify on his behalf.  Taylor, 484 U.S. at 654 n.14.  By failing to

mention the no contact order,  the Wisconsin Supreme Court had no factual basis from which

to infer a compulsory process claim as opposed to a confrontation claim.  The court was left

with no reason to believe that the petitioner could not have subpoenaed the witness himself,

or that the petitioner moved the court to call the witness on his behalf and refused. The

Wisconsin Supreme Court was not required to read beyond the petition to determine the

presence or nature of a federal claim. Therefore, it lacked the operative facts and legal principles needed to resolve the federal issue. Baldwin, 541 U.S. at 32.

Here, the petitioner fairly presented his compulsory process claim to the court of appeals. However, he did not present this claim in his petition for review filed with the Wisconsin Supreme Court. Accordingly, he procedurally defaulted on his claim of compulsory process because he failed to fairly present the issue at every level of the state's appeals process.

Once a court determines that the petitioner procedurally defaulted on his claim, it cannot reach a decision on the merits of that claim unless the petitioner can demonstrate, "(1) a cause for an actual prejudice arising from failing to raise the claim as required or (2) that enforcing the default would lead to a 'fundamental miscarriage of justice.'" Gomez, 350 F.3d at 679 (citing Wainwright v. Sykes, 433 U.S. 72, 87 [1977]).

To prove cause for an actual prejudice, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). A showing by the petitioner that the factual or legal basis for a claim was not reasonably available to counsel or a showing that interference by officials made compliance impracticable also constitutes actual prejudice. Id. The fundamental miscarriage of justice exception applies only when the petitioner is actually innocent of the crime for which he was charged, which occurs only in "extremely rare" and "extraordinary case(s)." Gomez, 350 F.3d at 679 (citing Schlup v. Delo, 513 U.S. 298 [1995]).

> To support a colorable claim of actual innocence the petitioner must come forward with "new reliable evidence . . . that was not presented at trial." [Schlup, 513 U.S. at 324]. The petitioner must also establish that "it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327.

- 20 -

Gomez, 350 F.3d at 679.

The petitioner did not assert either cause for an actual prejudice or a fundamental miscarriage of justice in his Reply and declined to file a response to the respondent's brief in opposition to his petition. Even if the petitioner had attempted to prove either of the exceptions, he would have failed on both accounts. First, the petitioner would be unable to show any "objective factor external to the defense" which impeded his efforts to comply with the state's procedures, because he proceeded pro se and routinely rejected the assistance of standby counsel. See Murray, 477 U.S. at 488. Second, the petitioner would be unable to show a fundamental miscarriage of justice because he could not come forward with new reliable evidence which would more likely than not cause a reasonable juror not to convict him at trial.

The petitioner offers an affidavit by the victim as new evidence not presented at trial, which states "Donelly Smith did not fracture [her] finger in the Fall of 2001." (Petitioner's Reply at 7). However, given that this was a domestic abuse case and that the affidavit was filed after the resolution of the jury trial, and considering the weight of the evidence against him, it is unlikely that no reasonable juror would have convicted the petitioner of substantial battery after hearing the evidence. Therefore, the petitioner procedurally defaulted on his compulsory process claim.

In sum, the decisions of the Wisconsin courts with respect to the petitioner's claims of judicial bias, violation of the confrontation clause and lack of self-representation were neither contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Also, the petitioner procedurally defaulted on his claim to lack of compulsory process by failing fairly and fully raise the issue to the Wisconsin

- 21 -

Supreme Court. Therefore, for the reasons stated herein, the petitioner's petition for a writ of habeas corpus will be denied.

On December 1, 2009, Rule 11(a) of the Rules Governing § 2254 Cases was amended. According to the amendment, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may "only issue if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893, and n. 4). When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In this case, reasonable jurists would not find the court's decision to deny the petition on procedural or substantive grounds debatable or wrong. Thus, the court will deny a certificate of appealability as to all of the petitioner's claims.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied** (Docket # 1).

- 22 -

**IT IS FURTHER ORDERED** that the Clerk of Court be and hereby is directed to enter judgment accordingly. (Docket # 20).

**IT IS FURTHER ORDERED** that a certificate of appealability shall not issue as to any of the petitioner's claims.

Dated at Milwaukee, Wisconsin this 23rd day of September, 2011.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. `GORENCE
United States Magistrate Judge